PREGERSON, Circuit Judge,
dissenting:
I agree with the majority that Robbins’ three appointment of counsel claims implicating his Sixth Amendment rights lack merit. I disagree, however, with the majority’s conclusion that the exculpatory evidence allegedly withheld from Robbins was not material, and I would reverse the district court on this basis. Therefore, I dissent.
Robbins claims that the prosecution violated his due process rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose (1) the victim’s rap sheet, (2) the ballistics report, and (3) documents that suggest that the victim was killed at 10:00 pm, instead of 6:00 to 6:30 pm as the prosecution argued at trial. These documents include the victim’s death certificate, the coroner’s investigator’s report, the GSR Data Sheet, and the Case Reported sheet. Instead of holding an evidentiary hearing to determine whether these documents were in fact turned over to Robbins, the district court dodged the issue by concluding that the evidence contained in these documents was not material. I disagree and would remand to the district court to determine whether the prosecution turned over these documents to Robbins.
Evidence is material under Brady “if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different.” Silva v. Brown, 416 F.3d 980, 985 *41 (9th Cir.2005) (citations omitted). The proper inquiry is whether the evidence the prosecution failed to disclose undermines the confidence in the verdict. Id. If the prosecution did in fact withhold these documents as Robbins asserts, I believe the guilty verdict returned on the murder charge is not worthy of our confidence.
A. The Victim’s Rap Sheet
In his pre-trial discovery motion, Robbins explicitly requested that the prosecution produce the victim’s rap sheet, which would have revealed that the victim was arrested a few months before his death for beating his wife. That rap sheet suggests that the victim was a violent person and that someone else might have had a motive to kill him. Regardless of whether the trial court would have admitted the victim’s rap sheet into evidence, its disclosure would have influenced Robbins’ defense strategy. United States v. Bagley, 473 U.S. 667, 682-83, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Therefore, the victim’s rap sheet is material for the purposes of Brady because there is a “reasonable probability that the result” of Robbins’ trial would have been different had the prosecution disclosed this evidence of Robbins’ violent propensities. Silva, 416 F.3d at 985.
B. The Ballistics Report
The majority affirms the district court’s finding that “the government did not violate Brady by withholding a [ballistics] report that does not exist.” Maj. op. at 39 I disagree. First, it defies common sense that the police did not produce a ballistics report in their investigation of a murder where the murder weapon was a gun, and expended bullets were found at the scene of the crime and some were lodged in the body of the victim. Second, Deputy Van Horn, a firearms examiner in the Los Angeles County Scientific Services Bureau, Firearm Identification Section, testified solely at trial about his conclusions that' the bullets found at the crime scene were fired from the same gun owned by Robbins’ brother-in-law and recovered from Robbins’ brother-in-law’s house. A ballistics report must therefore have existed, and such a report is certainly material in a case where the only physical evidence possibly linking Robbins to the murder scene was the validity of the match between the gun found at Robbins’ brother-in-law’s house and the bullets found at the murder scene.
While I recognize that there is a factual dispute whether the prosecution did in fact turn over Deputy Van Horn’s report to Robbins, oddly the district court’s conclusion here was based on its belief that no ballistics report existed. I would remand to the district court to determine (1) whether Deputy Van Horn’s report is a ballistics report, and (2) whether the prosecution in fact provided it to Robbins.
C.The Coroner’s Documents
The victim’s death certificate, the coroner’s investigator’s report, a GSR Data Sheet, and a Case Reported sheet all suggest that the shooting occurred at 10:00 pm and not at 6:30 pm, as the prosecution alleged at trial. The prosecution based its case at least in part on being able to place Robbins near the scene of the crime at around 6:30 pm when it believed the shooting took place.
The majority affirms the district court’s conclusion that these documents were not material “[b]eeause the overwhelming evidence presented at trial was contrary to the information in the four documents.” Maj. op. at 39. The majority, however, has applied the wrong standard.
As we stated in Silva, “[t]he question is not whether the defendant more likely *42 than not would have received a different verdict with the evidence, but whether in - its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” 416 F.3d at 985. ' The prosecution’s case here was based on circumstantial evidence placing Robbins at the scene of the crime around 6:00 and 6:30 pm. The only physical evidence possibly linking Robbins to the crime scene was a gun owned by Robbins’ brother-in-law and recovered from Robbins’ brother-in-law’s house. There was no evidence presented at trial directly linking Robbins to this gun. Therefore, these reports from the coroner’s office would have created a “reasonable probability that, had the evidence been disclosed to the defense, the result would have been different.” Id. If these four documents were not disclosed to the defendant, a guilty verdict on the murder charge is certainly not worthy of our confidence.
D. Conclusion
The majority’s conclusion that these documents were not material encourages prosecutors to play fast and loose with exculpatory evidence, believing they can hide behind the shield of immateriality. In this case, the prosecution will never have to respond to the allegation that it withheld critical exculpatory documents. Such a result breeds a disrespect for the law and the constitutional due process guarantees articulated in Brady.